JAMES FARISH, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF LINWOOD, NEW JERSEY, RESPONDENTS.

Submitted October 13, 1933—Decided January 29, 1934.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *William Elmer Brown, Jr.*

For the respondents, *Enoch A. Higbee, Jr.*

The opinion of the court was delivered by

CASE, J. The writ brings up an ordinance, adopted by the common council of the city of Linwood February 14th, 1933, repealing an earlier ordinance adopted November 9th, 1931. The earlier ordinance provided that the city "pension James Farish [who served the borough of Linwood as borough clerk for a period of forty-two years] the sum of three hundred and fifty dollars per annum, to be paid in equal monthly payments, said pension starting January 1st, 1932."

The city of Linwood was incorporated by chapter 265 (*Pamph. L.* 1931, *p.* 672), approved April 27th, 1931, and consisted of the territory theretofore incorporated as the borough of Linwood. It further appears that James Farish, the prosecutor herein, had been the clerk of the borough continuously from 1889 until the reincorporation as a city and that he acted as city clerk from that time until January 1st, 1932, when he retired, having passed the age of eighty years.

It is argued, on prosecutor's behalf, that the 1931 ordinance was passed in furtherance of chapter 103 (*Pamph. L.* 1923, *p.* 194), and that Farish was induced to relinquish his office in consideration of the promise of pension provided by that ordinance. But that does not appear in the proofs. The ordinance itself contains no such assertion; indeed it simply recites that Farish had, as was the fact, served the *borough* for forty-two years and in nowise refers to any service by him to the city. There is nothing in the proofs to indicate that Farish's continuance in office was other than a hold over from the borough appointment, though presumably he would have been (under chapter 135—*Pamph. L.* 1927, *p.* 249—applicable to all municipalities) entitled to tenure subject to removal for cause.

Prosecutor assigns three reasons upon which he argues that the repealing ordinance is illegal.

The first is that the 1931 ordinance constituted a contract which cannot be rescinded or abrogated. The proofs show a sequence of events but no contract. There is no evidence that Farish quit his job in consideration of the ordinance or that the ordinance was passed in consideration of his quitting. We need not consider whether such a contract would be valid.

The second is that the repealing ordinance is illegal because in violation of the law and statute in such case made and provided. No law or statute is suggested except chapter 103 (*Pamph. L.* 1923), and therefore this reason adds nothing to the one next mentioned.

The third is that the 1931 ordinance was passed by authority and in pursuance of chapter 103 (*Pamph. L.* 1923), and therefore may not be repealed. That statute is entitled "An act to provide for the maintenance of old and faithful servants of the several cities of the State of New Jersey." It provides as follows:

"1. Any person who has been continuously in the employ of any city of the State of New Jersey for a period of twenty-five years, and having reached the age of seventy years, may retire or be retired at any time thereafter; provided, however, that nothing in this act contained shall in any way affect the provisions of chapter 160, of the laws of 1920.

"2. On or after such retirement the said employe shall be paid by said city one-half of the amount he or she was receiving as salary from the city at the time of their retirement."

Except upon the reasoning that the facts of Farish's case come, in part at least, within the statute, there is nothing to show that the ordinance was in pursuance of the statute. The city argues that it was not and could not be because Farish had served the city for only a very few months, and the statute applies only to those who have been in the employ of a city for a period of twenty-five years. We find it unnecessary to determine that question. However, we cite the opinion of this court in *Van Dyke* v. *Board of Commissioners of Long Branch,* 88 *N. J. L.* 492, where a somewhat similar question was disposed of upon the reasoning that the pension act there under study was not limited to cities, that the pertinent words were *"all municipalities* other than cities of the first class" and that that language was sufficiently comprehensive to include Long Branch as a city and also as an improvement commission under its earlier incorporation; and we express a doubt whether it was the intention of the legislature, in providing for pensions to old and faithful servants of cities, to

make *mandatory* the payment of a pension to one who had spent all of his working years in the service of a lesser municipality and reached his eightieth year contemporaneously with the assumption by the municipality of a city incorporation.

The statute reaches out to the cases that come under its purview without the intervention of an ordinance. No adoption of the provisions of the statute by the city is necessary. When a city employe has, by age and years of service, come within the provisions of the act, and retires or is retired, the statute mandatorily requires the city to pay the pension in fixed amount. An ordinance neither adds to nor detracts from that duty. Unless the pension ordinance is essential to the effectiveness of the statute, prosecutor has shown no legal hindrance against the repeal of the ordinance. If the city is under the statutory duty to pay prosecutor a pension and fails therein it may be compelled by *mandamus*. Inasmuch as the ordinance is entirely detached from the source, as well as the method of enforcement, of prosecutor's asserted right, and is not shown to be of contractual origin, we consider that the assigned reasons fall short of showing illegality in the repealer.

We have assumed that the pension ordinance was legally adopted by the city of Linwood, though we are inclined to think that it was not. In the first place the return to the writ shows that all of the meetings having to do with the introduction, hearing on, and passage of the ordinance were meetings of the *borough council* of the *borough of Linwood*. Secondly: The ordinance was introduced and given a first reading at a regular meeting of the borough council held on the evening of October 19th, 1931. It was then ordered to be given an advertisement for, and a hearing at, the next regular meeting of the borough council November 2d, 1931. At the last mentioned meeting, held on the evening of November 2d, the ordinance was read and "laid over." Council adjourned "to meet at the call of the chair." The next record is of "an adjourned meeting of borough council" held on the morning of November 9th, 1931, and the ordinance was then amended and passed. No other business was transacted at

the meeting. Presumably that meeting was at the call of the "chair." There was no such continuity between the meeting of November 2d and that of November 9th as to enable the public to know when action upon the ordinance was to be taken, and no public notice of the final meeting was given; and that procedure seems to have been condemned in *Jersey City, &c., Railway Co.* v. *Passaic,* 68 *N. J. L.* 110.

The writ of *certiorari* will be dismissed, but without costs.